**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALERIE CARROLL,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>                    Defendant. | CASE NO. 1:12-CV-1341 AWI-GSA<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**INTRODUCTION**

Plaintiff Valerie Carroll ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter was submitted to the Court on the parties' briefs, without oral argument. Upon a review of the pleadings, the Court finds that the Commissioner's decision is based on proper legal standards and is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be affirmed.

///

///

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

## SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

On May 20, 2009, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income benefits, both alleging disability beginning on September 7, 2007. AR 122-127, 128-134. Her claims were denied initially on December 24, 2009, and upon reconsideration on March 3, 2010. AR 70-74, 76-81. On February 17, 2011, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim. AR 33-59. Plaintiff was represented by an attorney and testified at the hearing. AR 33-59. A vocational expert also appeared and testified. AR 53-57. In a decision dated April 22, 2011, the ALJ found that Plaintiff was not disabled. AR 19-28. In applying the five-step sequential disability determination analysis, the ALJ identified obesity, bilateral knee pain, and axial-, thoracic-, and lumbar-spine pain as severe impairments for Plaintiff. AR 21-22. Nonetheless, the ALJ determined that Plaintiff's impairments, either separately or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22. Next, based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work with some physical limitations, including using a cane for prolonged ambulation, occasionally climbing stairs, occasionally balancing and stooping, and never climbing ladders. AR 22. Finally, the ALJ found that Plaintiff was capable of performing her past relevant work as a receptionist as this occupation is generally performed in the national economy. AR 26. In addition, the ALJ found that Plaintiff could perform other jobs that were available in sufficient numbers in the national economy. AR 27. On June 14, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. Thereupon Plaintiff commenced this action in District Court. Doc. 1.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## DISCUSSION

Plaintiff raises two issues in this appeal. First, Plaintiff argues that the ALJ did not give legally sufficient reasons for discounting the opinion of the consultative examiner, Dr. Navjeet Bopari.[2] Next, Plaintiff argues that the ALJ did not give legally sufficient reasons for discounting Plaintiff's credibility. For the reasons set forth below, the undersigned finds that the ALJ's decision applies the correct legal standards and is supported by substantial evidence.

I. <u>The ALJ Properly Discounted the Opinion of CE Dr. Navjeet Bopari</u>

*(a) Relevant Facts*

Plaintiff, a 45-year-old female, applied for disability benefits alleging disability based on knee, back, and ankle problems. AR 161. The state agency arranged for Dr. Navjeet Bopari, M.D., to perform an orthopedic evaluation of Plaintiff on December 3, 2009. AR 316. Plaintiff advised Dr. Bopari that as a result of a fall in September 2007, she tore the meniscus in her right knee, fractured her left ankle and toes, and hurt her back.[3] AR 316-317. She rated the pain in her

---

[2] Plaintiff states in passing in her opening brief that the ALJ did not comply with SSR 02-1p. Doc. 19 at 9. However, beyond making this bare assertion, the Plaintiff does not address the requirements of SSR 02-1p or explain why and how it applies to this case. Since Plaintiff has not developed this issue with any specificity or detail, the Court cannot discern the substance and scope of her potential argument. Accordingly, the Court will not address this issue.

[3] In her application for disability benefits, Plaintiff also states that she "broke [her] ankle in three places, it needs surgery." AR. However, there is no medical evidence regarding an ankle or toe fracture in the record; rather the evidence in the record indicates that Plaintiff did not suffer such fractures. AR 24, 250, 260, 264, 292-293. Further, as to Plaintiff's allegation that she tore her meniscus when she fell in September 2007, the evidence in the record does not support this allegation. Specifically, Plaintiff was examined by her treating physician Dr. Jaki in October 2008; Dr. Jaki did not diagnose a meniscus tear. AR 297. Rather, Dr. Jaki noted that Plaintiff was in "no acute distress" and memorialized his conclusions as follows:
    Mrs. Carroll is a 44-year-old female with early degenerative changes of bilateral knees. I doubt
    the patient has significant meniscal pathology or surgical[ly] treatable lesions. At this point and

3

knees as "10/10,"[4] the pain in her ankle as "8/10," and the pain in her back as "9/10." AR 316-317. As for treatment, Plaintiff stated that she had sought physical therapy and injections for her knee pain. AR 317. She had not sought physical therapy for her back and ankle pain, but was awaiting surgery for her ankle and knees.[5] AR 317. Plaintiff told Dr. Bopari that she used a cane at all times but did not bring it with her to the examination. AR 317. Plaintiff advised Dr. Bopari that she has had multiple knee injections without obtaining permanent relief.[6] Finally Plaintiff advised Dr. Bopari that she used Motrin for pain relief. AR 317.

Dr. Bopari reviewed records from MRIs of Plaintiff's right and left knees that were conducted on March 11, 2009 and July 2, 2009 respectively; however, she did not document or analyze the MRI findings in her examination report. AR 316. Dr. Bopari also conducted a physical examination of Plaintiff and made the following diagnoses: (1) left lateral ankle pain, with associated left ankle weakness; (2) bilateral knee pain caused by degenerative changes; and (2) axial thoracic and lumbar spine pain, likely secondary to myofascial strain. AR 320. Dr. Bopari noted that Plaintiff had physical limitations on account of her symptoms. Specifically, Dr. Bopari noted that Plaintiff used a cane and would be limited to standing and walking for two hours, as extended periods of standing and walking would "put her at risk for falling." AR 320. Dr. Bopari did not clarify whether Plaintiff can stand and walk for two hours at a time with appropriate breaks, or whether Plaintiff was limited to standing and walking for two hours in an

---

> time I feel that her number one treatment goal would be weight loss…There are no surgical options at this point and time that would benefit the patient. The patient states that she would like to work on her weight some and unless her symptomatology significantly changes, she will hold off on injections for the time being."

AR 280-281. Furthermore, a MRI performed on Plaintiff's right knee on March 11, 2009 did not reveal any meniscal tears. AR 305-307. And although Plaintiff had a knee arthroscopy in 2002, Dr. Jaki noted that it was performed to address "mild degenerative changes." AR 180.

[4] Plaintiff described her knee pain in less severe terms to Dr. Jaki, her treating orthopedist. *See* AR 180.

[5] Plaintiff requested knee surgery and her treating orthopedist, Dr. Chan, indicated that arrangements would be made to accommodate Plaintiff's request. AR 298.

[6] The record reveals that Plaintiff had knee injections well before her September 7, 2007 injury and that after her injury she declined injections in favor of a weight-loss strategy for pain relief. AR 180-181.

eight-hour work day.  Dr. Bopari also found that Plaintiff should sit for up to two hours as her back condition "can be aggravated with extended periods of sitting." AR 320.  Again, Dr. Bopari did not clarify whether Plaintiff could sit for two hours at a time with appropriate breaks, or whether she could sit no more than two hours in an eight hour workday.  AR 320.  On October 29, 2009, a state agency case analyst, S. Kennedy, noted that Dr. Bopari's findings suggested a "less than sedentary RFC" and submitted the file to reviewing physician Dr. E. L. Gilpeer, M.D., for review.[7]  AR 315.  Analyst Kennedy also noted that "claimant alleges fractured ankle however there are no records in file that indicate a fractured ankle" but "she does have some arthritis of the ankle." AR 314.

   Dr. Gilpeer reviewed the file on December 23, 2009 and diagnosed Plaintiff with "knee and ankle disorders" and "thoracolumbar strain." AR 322.  Dr. Gilpeer opined that Plaintiff should be limited to a sedentary RFC, i.e., that Plaintiff could carry no more than 10 pounds at a time, stand and walk with normal breaks for up to 2 hours in an 8-hour workday, and sit with normal breaks for about 6 hours in an 8-hour workday.  AR 323.  Dr. Gilpeer noted that Plaintiff's treating physician, Dr. David Chan, M.D., had examined Plaintiff [on April 8, 2009] and noted in his consultation report [dated April 15, 2009] that Plaintiff walked with a slight limp on the right but had the full range of motion in her right knee; her ligamentous structures were stable; and her left knee was normal.[8]  AR 323; AR 296-298.  Dr. Gilpeer observed that Dr. Bopari did not review the entirety of Plaintiff's medical records and hence was unaware of findings made by Plaintiff's treating physicians, e.g., Dr. Chan.  AR 327.  Finally, Dr. Gilpeer listed some of Dr. Bopari's objective examination findings and opined that her conclusions were "out of line" with her own examination findings, e.g., that Plaintiff had 0-90 degree ranges of motion in both knees, normal

---

[7] There is no indication that S. Kennedy is a physician as he or she does not include "M.D." as a suffix upon signing the case analysis form or indicate any medical specialty on the form.  AR 315.

[8] Dr. Chan's consultation report, cited by Dr. Gilpeer, further states that Plaintiff had been examined in October [2008] by Dr. Jaki at Kaiser Permanente, and that "Dr. Jaki told her that if she were to lose weight, her knee would be fine." AR 297; 280.

ranges of motion in her ankles, normal range of motion in the cervical spine, dorsolumbar flexion performed to 60 degrees, and relatively good strength in her upper and lower extremities.  AR 327.  Dr. Gilpeer also noted that the Plaintiff had walked to the examination without assistance and got on and off the examination table without any problem.  AR 327.

On March 3, 2010, upon reconsideration of Plaintiff's application for disability benefits, another state agency reviewing physician, Dr. L. Limos, M.D., reviewed and affirmed Dr. Gilpeer's RFC determination [dated December 23, 2009].  AR 342.

The ALJ considered the assessments of both Dr. Bopari and Dr. Gilpeer.  AR 25.  The ALJ gave Dr. Bopari's examination little weight because it was "based upon a single examination of the claimant in a controlled environment, it is inconsistent with the reported findings and observations during the examination, and it is inconsistent with the other evidence in the record."  AR 25.  The ALJ gave Dr. Gilpeer's opinion substantial weight because it was "based upon an extensive review of the evidence in the entire record, the opinion contained specific findings and a discussion of the evidence to support the opinion, it is an area within Dr. Gilpeer's expertise, and it is consistent with the other evidence in the record."  AR 25.  As discussed below, the Court finds that the ALJ gave legally sufficient reasons, supported by substantial evidence in the record as whole, for rejecting Dr. Bopari's opinion.

*(b) Legal Standard for Discounting a Non-Treating Examiner's Opinion
in Favor of a State Agency Reviewing Physician's Opinion*

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinion is not contradicted, it can be rejected only for clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific and legitimate" reasons

that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a non-examining physician cannot *by itself* constitute substantial evidence to justify the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990). However, the opinion of a non-examining physician may constitute substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041, 1043; *Lester*, 81 F.3d at 830-831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989) (approving the ALJ's decision to reject the opinions of Magallanes' treating physicians because in so doing, the ALJ did not rely on the non-examining physician's testimony *alone*); *Roberts v. Shalala*, 66 F.3d 179,184 (9th Cir. 1995) (affirming ALJ's rejection of examining psychologist's functional assessment which conflicted with non-examining medical advisor's testimony and with his own written report and test results).

The Ninth Circuit has explained that "the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion." *Lester*, 81 F.3d at 831, n. 8. While Ninth Circuit "cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors—neither may be rejected without 'specific and legitimate' reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for 'clear and convincing' reasons—[they] have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians." *Id*. (citations omitted). "Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion. Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion." *Id*.

Finally, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957; *also see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

*(b) Analysis*

The ALJ set forth a detailed summary of the medical evidence, which relates to treatment sought by Plaintiff for injuries sustained in a fall in September 2007. AR 24. The ALJ noted that Plaintiff was able to walk after her fall and sought treatment at the emergency room. AR 24, 260. However, shortly thereafter, she reported that her pain had gotten "much better." AR 24, 260. X-rays revealed that she had no fracture or dislocation. AR 24, 250, 260, 264, 292-293. She was able to drive to her appointments. AR 24, 257.

The ALJ also noted that from 2004 through 2008, Plaintiff received chiropractic treatment for neck, shoulder, wrist, low back, and left ankle pain from chiropractor Brad V. Gunderson, D.C., who performed soft tissue manipulation, massage, spinal exercises, etc. AR 24, 241-243.

The ALJ noted that Plaintiff's treating orthopedist, Dr. Jaki, told her in October 2008 that "if she lost weight her knee would be 'fine.'" AR 24, 280, 297. Dr. Jaki offered cortisone and Supartz injections to Plaintiff but Plaintiff declined the injections in favor of a weight-loss strategy for pain relief. AR 23-24, 280-281. In April 2009, Plaintiff saw orthopedist Dr. David Chan, M.D., F.A.C.S., for knee pain. Dr. Chan noted degenerative changes. AR 24, 296-298. He did not recommend surgery and did not note significant objective findings. AR 296-298. Plaintiff nonetheless requested surgery and Dr. Chan's report indicates that Plaintiff had the option of proceeding with the surgery. AR 24, 298 ("arrangements will be made for right knee surgery"). Finally, the ALJ noted that Plaintiff was not taking any prescription medication to alleviate her pain and was able to obtain relief with the use of Motrin. AR 24, 280, 317.

After detailing Plaintiff's medical history, the ALJ thoroughly summarized Dr. Bopari's examination report, noting her largely unremarkable objective findings, as well as Dr. Gilpeer's

8

divergent analysis and conclusions as to Plaintiff's limitations. AR 25, 316-321, 322-327. The ALJ relied more extensively on Dr. Gilpeer's opinion and gave specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Bopari's opinion. The ALJ noted that Dr. Bopari did not have an ongoing treating relationship with Plaintiff and that her opinion was not consistent with other evidence in the record. The ALJ also detailed the diagnostic and treatment conclusions of Drs. Jaki and Chan, which did not support the extensive limitations that Dr. Bopari found. *See* AR 24, 279-281, 296-298. The ALJ further noted that Dr. Bopari's opinion was "inconsistent with the reported findings and observations during the examination." AR 25. The ALJ found that, in contrast to Dr. Bopari's opinion, Dr. Gilpeer's opinion contained "specific findings and a discussion of the evidence to support the opinion." AR 24. Dr. Gilpeer specifically referenced Dr. Chan's report and findings as well as pointed to discrepancies between Dr. Bopari's examination findings and her ultimate conclusions. The ALJ suggested that the bases for Dr. Bopari's conclusions were less clear than the bases for Dr. Gilpeer's conclusions. AR 25.

The ALJ's reasons for discounting Dr. Bopari's opinion are supported by substantial evidence. First, the treatment records of Drs. Jaki and Chan do not reflect that Plaintiff had seriously debilitating knee problems and Plaintiff did not address any ankle and back problems with these orthopedists. For example, in October 2008, treating orthopedist Dr. Kai Jaki, M.D., examined Plaintiff and noted early degenerative changes but no "significant meniscal pathology or surgical[ly] treatable lesions." AR 280. Dr. Jaki noted that Plaintiff denied any "true mechanical symptoms" and relieved pain by using Motrin and a topical ointment. AR 280. Dr. Jaki noted that Plaintiff declined cortisone or Supartz injections in favor of a weight-loss strategy for pain relief. AR 280. Finally, Dr. Jaki observed that Plaintiff only occasionally used a cane or crutch. AR 280. Next, Plaintiff relied on conservative treatment such as the use of over-the-counter analgesics and anti-inflammatory medicines, which also supports the ALJ's rejection of the stringent limitations assessed by Dr. Bopari. AR 280, 317. Finally, another state agency

reviewing physician, Dr. Limos, affirmed Dr. Gilpeer's RFC determination during the reconsideration of Plaintiff's disability application, which lends additional credence to the ALJ's analysis. AR 342. In sum the ALJ properly discounted Dr. Bopari's opinion by giving specific and legitimate reasons supported by substantial evidence in the record for doing so.

## II.     The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff argues that the ALJ did not provide legally sufficient reasons for rejecting Plaintiff's credibility. Doc. 19, 9:27, 11:5-10. However, the Court finds that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's credibility and her credibility determination is therefore proper.

At the February 2011 administrative hearing, Plaintiff testified that she had a high school diploma and had completed two years of college. AR 37. She stated that in September 2007, she fell and sustained knee, back, and ankle injuries, which prevented her from working. AR 37-38, 43. Plaintiff rated her pain at 7.5 on a scale of 1 to 10 with 10 being the highest degree of pain. AR 43. She testified that her pain was so severe that she could only stand or walk for 15 minutes and sit for 15 to 20 minutes at a time. AR 42-43. She further testified that she spent at least two hours a day watching television and eight or nine hours resting in her recliner. AR 40, 45. Plaintiff testified that she could only use her hands for an hour and a half before they would swell. AR 49. She testified that she could not lift things like "garbage, laundry baskets, babies, and puppies" but could lift a gallon of milk in each hand. AR 43-44.

Plaintiff lived on her own in an apartment. AR 38. She could dress herself but needed assistance getting in and out of the tub. AR 39. Plaintiff said that she did not perform household chores, cook, sweep, mop, do laundry, grocery shop, or wash dishes. AR 39-40. She said that her boyfriend, mother, sister, or brother helped her with chores three times a week. AR 39. Plaintiff testified that she could drive 20 minutes. AR 40. Plaintiff testified that she had no hobbies but attended church for an hour and a half each week. AR 52. She testified that she used to volunteer

as a traveling preacher but stopped due to scoliosis[9] and because she could no longer stand for long periods.[10]  AR 50.

Plaintiff confirmed that she was 5'10" and 260 pounds.  AR 46. When asked by her attorney whether her weight had "any impact on the pain in the knee and the back," Plaintiff said, "No. I was heavier before [than] I am now."  AR 46-47. When her attorney asked whether the "extra weight caused [an] increased burden on the joints or pain or anything like that," Plaintiff professed confusion and indicated that her symptoms were not related to her weight.  AR 47.  She clarified that she did not lose weight on a doctor's advice or for medical reasons but on her own initiative as she was "getting fat."  AR 47.  Plaintiff stated that she used to go to the doctor three times a week, but now went only once a month as her doctors have told her that there was nothing they could do until she had surgery.  AR 41-42.

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id*.  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  *Id*.

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

The ALJ may consider many factors in weighing a claimant's credibility, including (1)

---

[9] The medical record does not reflect that Plaintiff was diagnosed or treated for scoliosis.

[10] Plaintiff was also married to a pastor for a time.  AR 249; 128-129.

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL 374186. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 23. However, the ALJ further determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with her assessment of Plaintiff's residual functional capacity. AR 23.

The ALJ provided specific, clear and convincing reasons for her credibility determination. Specifically, she stated that she discounted Plaintiff's credibility as to her testimony regarding utterly disabling symptoms because of "significant inconsistencies between the claimant's alleged severity of her symptoms and limitations, and the evidence." AR 23. The ALJ pointed out that Plaintiff reportedly needed a cane to ambulate but she did not bring the cane to her orthopedic examination in December 2009. AR 23, 319. Plaintiff also did not bring the cane to the administrative hearing. AR 46. Although the ALJ found that Plaintiff would need a cane "for ambulation of long distances," the ALJ did not find Plaintiff's claims that she needed a cane "daily" and "at all times" to be credible.[11] AR 22, 23, 45-46, 192, 317. For example, the ALJ noted that Plaintiff moved about during her orthopedic examination in ways that did not suggest she was totally dependent on a cane. AR 25. Furthermore, the ALJ's analysis is supported by the record as Plaintiff told her treating orthopedist, Dr. Jaki, that she uses a cane only "[o]ccasionally." AR 280.

---

[11] Plaintiff reported to Dr. Bopari that she used a cane "at all times." AR 317.

The ALJ also noted inconsistencies in Plaintiff's statements about her ability to do household chores and other activities.  For example, the ALJ noted that Plaintiff had stated in an Exertion Questionnaire dated July 7, 2009 that she "performs household chores, such as washing dishes, mopping floors, and doing laundry" but that she "does not drive."  AR 23, 191.  The ALJ noted that at the administrative hearing, Plaintiff testified to the contrary, i.e., that she "cannot perform any household chores" but that she "can drive up to twenty minutes."  AR 23.  Indeed, the ALJ noted that Plaintiff drove to her podiatry appointment in September 2007, despite her statement to the contrary in the Exertion Questionnaire.  AR 24, 191 272.  The inconsistencies noted by the ALJ constitute a specific, clear and convincing reason, supported by the record, for her credibility determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ also discounted Plaintiff's credibility based on the fact that while Plaintiff rated her pain at 7.5 on a 10 point scale (with 10 being the most intense pain) and testified that she could not stand or walk for more than 15 minutes and sit for more than 15-20 minutes at a time, the record reflected only conservative treatment for her impairments.[12]  AR 23-24, 42-43.  The ALJ noted that Plaintiff was not taking any prescription pain medication and reported that her pain was controlled with Motrin.  AR 24, 42, 280; 317.  The ALJ's reasoning is supported by substantial evidence.  For example, shortly after Plaintiff's accident in September 2007, Dr. Gregg Gilles, D.P.M., recommended that she wear an equalizer boot, and ice and exercise her ankle.  AR 274.  Furthermore, in October 2008, Dr. Kai Jaki, M.D., recommended that Plaintiff lose weight and continue using anti-inflammatory medication such as Motrin.  AR 280.  Dr. Jaki also offered cortisone and Supartz injections to Plaintiff, which she declined in favor of a weight-loss strategy for pain relief. AR 280-281. An ALJ may discount a claimant's symptom testimony where the claimant describes severe and disabling symptoms but has sought or received only minimal or conservative treatment for his or her complaints.  *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level

---

[12] Plaintiff had described her pain to the consulting examiner, Dr. Bopari, as follows:  her knee pain rated 10/10, her back pain rated 9/10, and her ankle pain rated 8/10.  AR 316-317.

of complaints."). The ALJ properly based her credibility determination on Plaintiff's limited treatment history.

Finally, the ALJ considered Plaintiff's daily activities, noting that they indicated an ability to live independently. AR 23. For example, the ALJ observed that Plaintiff reported that she lived alone and participated in church activities for about an hour and a half per week. AR 23, 38, 52. She can get dressed, climb stairs with additional time, carry a grocery bag, shop once a month with assistance, and watch television for two hours. AR 23, 40, 46, 191. In the Exertional Questionnaire Plaintiff reported that she could perform household chores, including washing dishes, mopping the floor, and doing laundry. AR 23, 191. Plaintiff reported that she does not do yard work and, as her symptoms worsen, her pain has caused her to stay inside her house all day. AR 23, 191. In assessing a claimant's credibility, an ALJ may consider whether the claimant's statements are consistent with the individual's daily activities. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to perform various household chores such as cooking, laundry, washing dishes and shopping," among other factors, bolstered "the ALJ's negative conclusions about [her] veracity"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (claimant's daily activities that contradict claimant's other testimony vitiate claimant's credibility); SSR 97-6p. The record reflects that Plaintiff's daily activities are fairly limited. However, to the extent Plaintiff alleges that she cannot sit, stand, or walk for more than about 15 minutes at a time, the ALJ can consider whether her testimony regarding these disabling symptoms is belied by her daily activities. AR 23, 42. Here the ALJ found that Plaintiff's daily activities undercut her credibility with regard to her testimony about severely disabling symptoms. AR 23. The ALJ did not arbitrarily discredit Plaintiff's credibility but provided a number of specific reasons, based on substantial evidence in the record as a whole, for doing so.

In sum, the ALJ cited specific, clear and convincing reasons, based on permissible grounds and supported by the record as a whole, for rejecting Plaintiff's subjective complaints regarding

the intensity, duration, and limiting effects of her symptoms.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Accordingly, the ALJ's credibility determination is proper.

## CONCLUSION

For the forgoing reasons, the Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as whole.  Accordingly, this Court recommends that Plaintiff's appeal from the administrative decision of the Acting Commissioner of Social Security be DENIED and that the Clerk of this Court be DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, and against Plaintiff Valerie Carroll.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to any objections shall be filed within 14 days after service thereof.  Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 19, 2015**                      /s/ Gary S. Austin
                                          UNITED STATES MAGISTRATE JUDGE